Lowell **GRAHAM**, Appellant
(Plaintiff Below),

v.

Don **SCHREIFER**, et al., Appellee
(Defendant Below).

No. 4–783A224.

Court of Appeals of Indiana,
Fourth District.

Sept. 4, 1984.

Susan L. Kehoe, Brown, Rakestraw & Kehoe, Rochester, for appellant.

Russell D. Millbranth, P.C., Winamac, for appellee.

MILLER, Presiding Judge.

In June, 1973, plaintiff-appellant Lowell Graham obtained a judgment in the amount of $35,150 against defendant-appellee Don Schreifer after Schreifer's attorney had withdrawn his appearance and Schreifer had failed to appear for trial. No action was taken to enforce the judgment until February, 1983, nine years and nine months after the judgment was entered, when Graham filed proceedings supplemental to execution. Schreifer then filed a motion pursuant to Ind.Rules of Procedure, Trial Rule 60(B) to set aside the judgment which the court granted. We have determined that, although Schreifer's T.R. 60(B) motion was filed almost ten years after judgment, the trial court did not abuse its discretion in granting said motion because of extraordinary circumstances justifying relief under Ind.Rules of Procedure, Trial Rule 60(B)(8). Affirmed.

## FACTS

The record reveals that on June 28, 1972, Graham filed a two-paragraph complaint against Schreifer and C.J. Fenzau, as individuals, and against Select Farms of America, Inc. of which Schreifer and Fenzau were shareholders. He alleged the defendants (1) refused to pay for grain he delivered to them and (2) failed to keep a promise to reimburse him for a crop loss which he sustained after he treated a grain crop with a substance they had recommended. After service of summons was made upon Schreifer on June 30, 1972, attorney Stephen Bower entered an appearance for all the defendants, the fact of which Schreifer was informed by Fenzau. Bower shortly thereafter filed an answer, a motion for change of venue, a set of interrogatories, and participated in depositions taken of both Fenzau and Schreifer. The case was then venued to the Pulaski Circuit Court where it was set for a jury trial on June 11, 1973.[1] However, on June 4, 1973, one

---

1. It is not clear which party requested trial by jury in this cause. Evidently, Graham did because the court's minutes indicate the court specifically set the case for jury trial upon Graham's oral motion made February 8, 1973, which trial was later continued in the same

week before the scheduled trial date, Bower filed a petition to withdraw his appearance for the defendants, alleging he had written Fenzau twice regarding trial arrangements and a possible settlement offer and had received no response from him or any other defendant. No mention was made in his petition that he had attempted to notify Schreifer. The court granted Bower's petition to withdraw June 11, 1973, and continued the trial date "pending receipt of [Graham's] motion to enter a default" because none of the defendants had shown up for trial. On June 14, 1973, Graham filed a motion for default judgment, along with an affidavit asserting damages in the amount of $35,150.00. The trial court heard evidence without the intervention of a jury, despite the fact both parties failed to concur in the withdrawal of the issues from jury consideration. The court granted judgment to Graham that same day.

No further action was taken in the case until February 9, 1983 (nine years and nine months after judgment was entered), when Graham filed a motion to enforce the judgment against Schreifer by proceedings supplemental to execution. Schreifer responded by filing a T.R. 60(B) motion to set aside the 1973 judgment, alleging the judgment was void as he was never notified of Bower's withdrawal nor of Graham's request for a default judgment. On April 18, 1983, at the hearing on his motion, Schreifer testified he believed he was being represented in the suit as a shareholder of Select Farms. He further testified neither attorney Bower nor the court ever informed him of the original June 11 trial date, Bower's withdrawal, or any subsequent proceedings. This testimony is supported by the record which contains no reference of notice being given to Schreifer of the court's order of

withdrawal, the "default" hearing date, or of the judgment itself. The court granted Schreifer's motion, set aside the previous judgment and ordered a pre-trial conference. Graham then filed a motion to correct errors, which was denied.

The instant appeal followed.[2]

## DECISION

◼ In reviewing a trial court's decision rendered upon a T.R. 60(B) motion, we are limited to deciding whether the trial court has abused its equitable discretion in its ruling. *First National Bank & Trust Co. of Crawfordsville v. Coling*, (1981) Ind. App., 419 N.E.2d 1326. "An abuse of discretion will be found only where the court's conclusion and judgment is an erroneous one, 'one clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Summerlot v. Summerlot*, (1980) Ind. App., 408 N.E.2d 820, 828; *Rose v. Rose*, (1979) 181 Ind.App. 98, 390 N.E.2d 1056. The burden is on the movant to establish the existence of grounds for T.R. 60(B) relief, *Crown Aluminum Industries v. Wabash Co.*, (1977) 174 Ind.App. 659, 369 N.E.2d 945, in addition to which, he must establish a meritorious defense to the judgment. *Moe v. Koe*, (1975) 165 Ind.App. 98, 330 N.E.2d 761. In Schreifer's actual T.R. 60(B) motion, he alleged the judgment was void and therefore should be set aside by reason of Ind.Rules of Procedure, Trial Rule 60(B)(6). The trial court issued only a general order, without specification of the T.R. 60(B) grounds for granting relief so, in subsequent arguments, Schreifer contends T.R. 60(B)(8) was applicable. For the reasons which follow, we agree with Schreifer that T.R. 60(B)(8) was the perti-

posture on February 27, 1973. Record, pp. 45, 46.

**2.** We are somewhat perplexed at the default judgment procedures employed here. Once the issues were closed by the filing of the defendants' answer, the trial court had no choice but to try the case on the merits, regardless of the defendants' absence. (Bower's withdrawal as

their attorney did not withdraw their answer.) Here, the record reveals a trial on the merits was held by virtue of the fact evidence was presented, and the court made findings on the merits of Graham's claims as well as on damages. *See Hampton v. Douglass*, (1983) Ind. App., 457 N.E.2d 618.

nent provision for affording relief from Graham's judgment.

Before proceeding further with the merits of the court's decision, we feel compelled to digress briefly to establish two basic tenets of law under which we have labored in researching and addressing the issue herein. First of all, we feel comfortable in referring to federal authorities when a federal rule of procedure parallels an Indiana rule, especially where, as here, the facts present issues upon which Indiana authority may be sparse. *See Gumz v. Starke County Farm Bureau Co-operative Association, Inc.*, (1979) 271 Ind. 694, 395 N.E.2d 257; *Yaksich v. Gastevich*, (1982) Ind.App., 440 N.E.2d 1138. In addition, we have discovered no reason for differentiating between T.R. 60(B) cases based on judgments on the merits and those based on any other types of judgment (except for perhaps a more liberal proclivity toward granting a T.R. 60(B) motion upon default judgments). *See C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, (7th Cir.1984) 726 F.2d 1202; *Seven Elves, Inc. v. Eskanazi*, (5th Cir.1981) 635 F.2d 396; *compare Moe v. Koe*, 165 Ind.App. 98, 330 N.E.2d 761 (judgment on merits) with *Blichert v. Brososky*, (1982) Ind.App., 436 N.E.2d 1165 (judgment of dismissal) *and H & A, Inc. v. Gilmore*, (1977) 172 Ind.App. 10, 359 N.E.2d 259 (default judgment). Having set forth the foregoing basic housekeeping rules, we will hopefully avoid having to render a detailed justification for our cited authority herein, which may not be from this jurisdiction nor directly on point.

■ Proceeding to the matter at hand, we find the T.R. 60(B) provisions pertinent to the controversy here to be as follows:

"(B) Mistake—Excusable neglect—Newly discovered evidence—Fraud, etc. On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:

(1) mistake, surprise, or excusable neglect;

(2) any ground for a motion to correct error, including without limitation newly discovered evidence, which by due diligence could not have been discovered in time to move for a motion to correct errors under Rule 59;

(3) fraud ..., misrepresentation, or other misconduct of an adverse party;

(4) entry of default or judgment by default was entered against such party who was served only by publication and who was without actual knowledge of the action and judgment, order or proceedings;

\* \* \* \* \* \*

(8) *any reason justifying relief from the operation of the judgment, other than those reasons set forth in subparagraphs (1), (2), (3), and (4).*

The motion shall be filed within a reasonable time for reasons (5), (6), (7), and (8), and not more than one year after the judgment, order or proceeding was entered or taken for reasons (1), (2), (3), and (4)." (Emphasis added.)

According to Professors Harvey and Townsend,

"Rule 60(B)(8) is a catch-all provision allowing the court to vacate a judgment within the residual power of a court of equity to do justice. Experience under its counterpart from the Federal Rules does not lend much support as to its meaning, except that it has been liberally construed to include old remedies not covered by other statutes and precedent and extend it to new situations."

4 W. HARVEY & R. TOWNSEND, INDIANA PRACTICE § 60.17 (1971). These residual powers under subsection (8) "may only be invoked upon a showing of *exceptional circumstances justifying extraordinary relief*," *In re Marriage of Jones*, (1979) 180 Ind.App. 496, 389 N.E.2d 338, 340 (emphasis in original), and is exclusive of other remedies available under T.R. 60(B)(1), (2), (3), and (4). *Blichert v. Brososky, supra*, 436 N.E.2d 1165. We conclude that the unfortunate combination of events

herein deserves T.R. 60(B)(8)'s extraordinary relief although each individual event may not, of itself, call for such measures.

■ Schreifer, first of all, apparently had no measure of control over employment of attorney Bower. He was led to believe he was being sued in his capacity as a shareholder in Select Farms, and Bower was evidently retained by Fenzau, co-defendant and also a shareholder. This situation would logically explain why Bower's motion to withdraw only mentions his communications with Fenzau, regarding trial arrangements and a possible settlement, and the lack of response thereto. Such would also buttress Schreifer's claim Bower never contacted him with regard to the first trial date, and we decline to rule that Bower's notice to one defendant, Fenzau, is sufficient notice to his co-defendant, Schreifer. *Cf. State ex rel. Sargent & Lundy v. Vigo Superior Court,* (1973) 260 Ind. 472, 296 N.E.2d 785 (court's notice to defendant and counsel is not notice to co-defendant and counsel); *State v. Baker,* (1963) 243 Ind. 635, 189 N.E.2d 580. Schreifer further denies any knowledge of Bower's withdrawal, of the reset trial date, or of the judgment. We know such notice was never given by the court by the marked absence in the record of any notations to that effect. It is also clear that attorney Bower failed to adequately give Schreifer due notice he would no longer be represented, *see Hawblitzel v. Hawblitzel,* (1983) Ind.App., 447 N.E.2d 1156; Code of Professional Responsibility, Ethical Consideration 2–32,[3] in all probability leaving Schreifer "without any guidance regarding the steps necessary to obtain new counsel and ... unaware that there [were] deadlines which must be met...." *U.S. v. Crespo,* (2d Cir.1968) 398 F.2d 802, 802.

Despite the above, appellant Graham insists Schreifer's motion should arguably

have been denied as being exclusively within T.R. 60(B)(1) and therefore filed beyond that provision's one-year limit. *See, e.g., H & A, Inc. v. Gilmore,* 172 Ind.App. 10, 359 N.E.2d 259. Schreifer, even though left in such vulnerable position without counsel at the day of trial, could perhaps be said to have permitted the judgment against him as a result of mistake, surprise, or excusable neglect. *See Bridoux v. Eastern Air Lines, Inc.,* (D.C.Cir.) 214 F.2d 207 *cert. denied* (1954) 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647; *Stewart v. Hicks,* (1979) Ind. App., 395 N.E.2d 308. Such mistake, surprise, or excusable neglect could possibly be characterized as either a result of Schreifer's own negligence, *see H & A, Inc. v. Gilmore,* 172 Ind.App. 10, 359 N.E.2d 259, or of Bower's negligence, of which Schreifer would ordinarily be held accountable. *See Rose v. Rose,* 181 Ind.App. 98, 390 N.E.2d 1056; *Sharp v. Grip Nut Co.,* (1945) 116 Ind.App. 106, 62 N.E.2d 774 (negligence of attorney imputed to client); *but see Barber v. Turberville,* (D.C.Cir. 1954) 218 F.2d 34. However, we believe Schreifer's unique circumstances militate against such a result.

We are cognizant of authority that holds lack of notice of certain proceedings occurring in a pending action is insufficient grounds for granting equitable relief under T.R. 60(B). *E.g., Spence v. Supreme Heating & Air Conditioning Co.,* (1982) Ind. App., 442 N.E.2d 1144. But we believe this rule is typically, and more appropriately, reserved for those cases where a party seeks sanctuary within T.R. 60(B) because he claims he failed to receive notice of a ruling within sufficient time to avail himself of a motion to correct error under Ind.Rules of Procedure, Trial Rule 59. We do not find such a rule wholly applicable where a defendant fails to receive notice of rulings which directly affect his ability to

---

**3.** Ethical Consideration 2–32 states in pertinent part:

"Even when he justifiably withdraws, a lawyer should protect the welfare of his client by giving due notice of his withdrawal, suggesting employment of other counsel, delivering to the client all papers and property to which

the client is entitled, cooperating with counsel subsequently employed, and otherwise endeavoring to minimize the possibility of harm. Further, he should refund to the client any compensation not earned during the employment."

defend his cause of action. In this case, the unrefuted evidence presented by Schreifer indicates he had received no notice of his attorney's withdrawal, of either trial date, or of the judgment. We believe these circumstances are closely akin to a denial of due process, which on occasion has been sufficient grounds for finding a judgment totally void. *See, e.g., Bass v. Hoagland*, (5th Cir.) 172 F.2d 205, *cert. denied* (1949) 338 U.S. 816, 70 S.Ct. 57, 94 L.Ed. 494; *Sonus Corp. v. Matsushita Electric Industrial Co., Ltd.*, (D.Mass. 1974) 61 F.R.D. 644; *but see Winfield Associates, Inc. v. Stonecipher*, (10th Cir. 1970) 429 F.2d 1087. Without having to go so far, we believe the unusual passage of events falls within that category of extraordinary circumstances making a judgment merely voidable under T.R. 60(B)(8). *See In re Winters*, (10th Cir.1978) 586 F.2d 1363 (dicta); *United States v. Manos*, (S.D. Ohio 1972) 56 F.R.D. 655; *Fleming v. Mante*, (N.D.Ohio 1950) 10 F.R.D. 391.

We recognize that Schreifer may not have been diligent in keeping himself informed of the status of his case. *See International Vacuum, Inc. v. Owens*, (1982) Ind.App., 439 N.E.2d 188. However, because of the speed with which the court acted after Schreifer's attorney withdrew, he had no opportunity to be diligent in protecting his rights at trial. Nor, do we suspect, did he feel any need to be if he believed the corporation, Select Farms, was the target of the suit rather than himself personally. Regardless, we are not certain Schreifer's diligence is necessarily at issue here. *See Bass v. Hoagland*, 172 F.2d at 209 ("want of diligence in not sooner finding out what had become of his case is not the question here, but the constitutional validity of this judgment under the admitted facts"). Diligence seems more likely to be questioned when a T.R. 60(B) motion is being used to supplant a properly timed motion to correct error. *But see Blichert v. Brososky, supra*, 436 N.E.2d 1165. In this case, we are assailing the actual validity of the judgment under T.R. 60(B)(8) wherein Schreifer's due process rights were infringed. Our consideration therefore is whether his decision not to attend trial or to take a timely appeal was *deliberate*.

In this regard, we note the deliberate action of parties has been grounds for denying relief, as in *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co., supra*, 726 F.2d 1202, and *Winfield Associates, Inc. v. Stonecipher, supra*, 429 F.2d 1087. We thus believe the *absence* of any deliberate action on Schreifer's part in failing to show at trial or to launch a timely appeal to also be of significance. "The common thread running through all the decisions is that the ruling on a rule 60(B) motion ... should depend largely on the willfulness of the ... party's actions." *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d at 1205. Schreifer did not deliberately occasion the errors in procedure here, and the judgment was properly set aside.

Having determined procedural error in the judgment against Schreifer, our decision to affirm the trial court is further strengthened by the fact that Schreifer was denied his right to a trial by jury. The record here clearly reveals a jury trial was requested although it is not altogether clear which party made such request. The right to a jury in civil cases is found in the Indiana Constitution, Art. 1, § 20 and is preserved for actions at law. Ind.Rules of Procedure, Trial Rule 38(A); *Estate of Ballard v. Ballard*, (1982) Ind.App., 434 N.E.2d 136. Graham's complaint sounded in contract, seeking damages for the breach thereof. This is an action at law, *see Pell v. Farquar*, (1834) 3 Blackford 331 *overruled on other grounds*, and a jury trial seems to have been properly requested. However, no jury trial was held, and nowhere does the record reveal either party here even withdrew the demand for a jury much less consented to such withdrawal. "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the other party or parties." Ind.Rules of Procedure, Trial Rule 38(D). The court's failure to conduct

a jury trial was reversible error. *See Shaw v. Kent,* (1858) 11 Ind. 80.

■ We are mindful of T.R. 38(D)'s provisions governing the waiver of one's right to trial by jury.

> "The failure of a party to appear at the trial, and the failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(D) constitute waiver by him of trial by jury."

Schreifer did not appear at trial; however, the circumstances surrounding his nonappearance, described above, are of such mitigating nature that we refrain from administering harsh measures denying his right to a jury trial when he had not deliberately missed a viable opportunity to object to a trial by the court. The second waiver factor, timeliness of demand, could also be in issue here: where a party does not timely demand a jury trial, he waives such right and cannot complain as to the trial court's action, setting cause for jury trial upon that party's request, then thereafter denying a jury trial. *Jameson v. McCaffry,* (1973) 157 Ind.App. 480, 300 N.E.2d 889. However, our record does not reveal when or in what manner the jury trial was requested. We cannot say without doubt that lack of timeliness should prevent the request for jury trial here from being fulfilled. We, therefore, conclude Schreifer did not waive his right to jury trial. And even though the trial court may indeed have conducted the trial justly, "[t]he right of a trial by jury is guaranteed to parties by the Constitution and laws of the state, and of this right they cannot be deprived in any case, upon the ground that the court fairly tried and correctly determined it." *Shaw v. Kent, supra,* 11 Ind. at 83. We are of the opinion that the failure to respect the jury trial request, compounded by the other procedural irregularities, is sufficient for us to conclude the trial court did not abuse its discretion in setting aside the judgment so long as Schreifer's motion was filed within a reasonable time.

■ Here, Schreifer did not file his T.R. 60(B) motion until Graham brought proceedings supplemental nine years and nine months after judgment—which clearly presents the question of whether such expanse of time was reasonable under the circumstances. The time limit within which to present a T.R. 60(B)(8) motion is restricted only by a measurement of reasonableness, and the determination of what constitutes a reasonable time varies with the circumstances of each case. *Public Service Commission v. Schaller,* (1973) 157 Ind.App. 125, 299 N.E.2d 625. We must consider not only the length of time elapsed from the time of judgment to the filing of a T.R. 60(B)(8) motion but also the "circumstances of the delay and the possibility of prejudice to the opposing party." *Matter of Emergency Beacon Corp.* (2d Cir.1981) 666 F.2d 754, 760. Typically, courts have struck a rather "liberal attitude where no intervening rights have been affected by the passage of time between judgment and motion," *Nowicki v. United States,* (7th Cir.1976) 536 F.2d 1171, 1175, *cert. denied* (1977) 429 U.S. 1092, 97 S.Ct. 1103, 51 L.Ed.2d 537, where no rights have attached in reliance on the judgment, and where no actual injustice will result. *Fidelity & Deposit Co. of Maryland v. USAFORM Hail Pool, Inc.,* (5th Cir.1975) 523 F.2d 744, *cert. denied* (1976) 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194; *In re Cremidas' Estate,* (D.C.1953) 14 Alaska 234, 14 F.R.D. 15; *cf. Madesky v. Campbell,* (3rd Cir.1983) 705 F.2d 703 (factors to consider in setting aside dismissal for failure to prosecute: (1) the degree of the plaintiff's personal responsibility for the delay; (2) prejudice to the defendant occasioned by the delay; (3) any history that the plaintiff proceeded in a dilatory manner). In the instant case, almost ten years separated Graham's judgment and Schreifer's T.R. 60(B) motion. We cannot help but recognize that some of this delay is attributable to the lack of diligence on Schreifer's part. As discussed above, such lack of diligence is a significant factor when scrutinizing the passage of time past the proper time for appeal. But we are aware that Schreifer believed the action was primarily against the corporation and that he was generally not involved with the attorney handling the case.

In addition, we must point out that Schreifer was not apprised of the judgment until Graham instituted proceedings supplemental against him, at which time he promptly took action to rectify the problem. From Graham's standpoint, we fail to see how setting aside the judgment will do him an injustice—he evidently had not placed any great significance upon the judgment by waiting almost ten years to execute upon it. This lapse of time would not only indicate Graham's lack of reliance upon the judgment but would also tend to make Schreifer believe he had incurred no liability. *See Fleming v. Mante, supra,* 10 F.R.D. 391. Under all the circumstances, we find the passage of time here to fit within the standard of reasonableness accorded T.R. 60(B)(8) motions.

Having deemed the proceedings to have established sufficient grounds for relief, we also decide that Schreifer presented evidence of the second element required in a successful T.R. 60(B) motion, a meritorious defense. *See, e.g., Moe v. Koe, supra,* 165 Ind.App. 98, 330 N.E.2d 761. Schreifer understood Graham's action to be against the corporation, Select Farms, and that his only liability would be in his role as a shareholder therein. A study of the complaint does not wholly convince us his statement of the cause may not well be correct. If such is indeed the case, then Indiana law clearly limits Schreifer's liability for any judgment against the corporation:

"Subscribers and shareholders shall be liable for the debts of a corporation only to the extent of any unpaid portion of their subscriptions for shares of the corporation or any unpaid portion of the consideration for the issuance to them of shares of the corporation.

No action shall be brought by or on behalf of any creditor to reach and apply any such liability to any debt of the corporation until after final judgment shall have been rendered against the corporation in favor of such creditor and execution thereon returned unsatisfied, or the corporation shall have been appointed with power to collect debts, and which receiver, on demand of a creditor to bring suit thereon, has refused to sue for such unpaid subscription or the corporation shall have been dissolved or ceased business leaving debts unpaid; nor shall any such action be brought more than three (3) years after the happening of any one (1) of such events."

IND.CODE 23–1–2–6(h). Thus, Graham may have only a limited cause of action against Schreifer, if any. *See Birt v. St. Mary Mercy Hospital of Gary, Inc.,* (1977) 175 Ind.App. 32, 370 N.E.2d 379. This is a meritorious defense to Graham's cause.

We are satisfied that Schreifer properly bore his burden here in establishing a successful T.R. 60(B) motion, based on consideration of the provisions in T.R. 60(B)(8), which permit extraordinary relief where exceptional circumstances exist. The trial court did not abuse its discretion in setting aside Graham's judgment.[4] *See generally Soft Water Utilities, Inc. v. LeFevre,* (1973) 261 Ind. 260, 301 N.E.2d 745.

We affirm.

CONOVER and YOUNG, JJ., concur.

---

**4.** The abuse of discretion standard of review of trial court judgments is a broad one, and when we considered the decisions of numerous state and federal courts regarding T.R. 60(B) motions, we discovered absolutely no consistency, no pattern to what did or did not constitute an abuse of discretion. Frankly, if the trial court here had denied the motion, we would have been hard-pressed to determine *that* action would have been an abuse of discretion. (However, the due process considerations herein would probably have required a reversal.) The equities to consider and balance in any given case are usually of such nonrepetitive nature that an overall schemata of all the T.R. 60(B) cases would more likely remind one of the shifting patterns of moire rather than of a steadfast progression between two points labelled "abuse of discretion" and "no abuse of discretion." Within this context, we have endeavored to reach a proper balance between the factual circumstances and the freedom of (and appellate respect for) the decision of the trial court, which basically is what the abuse of discretion standard is all about.